**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TOBIE B. ROSS, JR.; ALLEN PROVOST; T. MARIE MC CALL; ALBERT L. LEMONS; SILVIA BROOKS WILLIAMS; CHARLES H. TAYLOR; and BARBARA A. GATSON; BOARD OF TRUSTEES FOR NORTH FOREST INDEPENDENT SCHOOL DISTRICT, | } } } } } } } } | |
| Plaintiffs, | } } | |
| VS. | } } | CIVIL ACTION NO. H-08-3049 |
| TEXAS EDUCATION AGENCY; and STATE OF TEXAS, | } } } | |
| Defendants. | } } } | |

**OPINION & ORDER**

Pending before the Court is Defendants the State of Texas ("State") and the Texas Education Agency ("TEA") Motion to Dismiss (Doc. 10); and the response and reply thereto. Pursuant to the Court's Order of October 28, 2008, the Motion to Dismiss is to be treated as one for Summary Judgment. For the reasons discussed below, the Court hereby ORDERS that Defendants' motion (Doc. 10) is GRANTED.

**I.      Background**

This motion for summary judgment arises out of the temporary suspension of the duties of the board of trustees of the North Forest Independent School District ("NFISD") and their replacement by a board of managers as authorized by the Commissioner of Education for the Texas Education Agency ("TEA"), Robert Scott ("Commissioner"). The plaintiffs in this

case, individual members of the NFISD board of trustees (collectively, "Plaintiffs"),[1] seek to vacate the TEA's decision to appoint a board of managers.  They assert claims for violations of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973 *et seq.*, in addition to equal protection and due process violations.

Over the past ten years, NFISD has experienced serious and systemic financial, accounting, record-keeping, academic, and operational difficulties.  According to Ronald Earl Rowell ("Rowell"), the Senior Director of the Governance and General Inquiries Division for the TEA, NFISD is in a "dire financial condition."  (Rowell Aff. at 4, Doc. 8).  The history of NFISD's financial difficulties is long and complex; however, several recent deficiencies are particularly relevant for the Court's purposes here.  For example, during the 2005-2006 school year, NFISD over-reported its student average daily attendance to TEA by approximately 850 students, which resulted in an overpayment by TEA of $4.5 million that year.  (*Id.*).  The following year, NFISD over-reported its student average by nearly 1000 students, resulting in an overpayment of $5.7 million.  (*Id.*).  TEA is in the process of reclaiming this money, and, as a consequence, NFISD is experiencing significant cash flow shortages.  (*Id.*).  For the fiscal year ending August 31, 2007, NFISD had a fund balance deficit in excess of $5 million.  (*Id.*).  The following year, NFISD had an estimated cash flow deficit in excess of $13 million and a fund balance deficit of $7-8 million.  (*Id.*).  Additionally, NFISD has misspent the proceeds of certain construction bonds by impermissibly using the funds for general operating expenses.  (*Id.*).  The total amount "borrowed" from the bond fund is approximately $12.5 million, none of which has been repaid.  (*Id.*).  Because these bonds are guaranteed by the State Permanent School Fund, a default by NFISD could require the State to pay this debt.  (*Id.*).

---

[1]      The board of trustee members include: Tobie Ross (president), Allen Provost (vice president), Charles H. Taylor (member), Silvia Brooks William (member), Barbara Gatson (member), Marie McCall (secretary), and Albert Lemons (assistant secretary).

These serious and systemic financial difficulties necessitated the TEA's intervention. In 2007, the TEA appointed both a financial and an academic conservator to facilitate NFISD's regaining its financial stability and improving its academic program. (*Id.* at 6). Unfortunately, however, the serious financial problems persisted.

On July 31, 2008, Commissioner Scott informed the NFISD board of trustees that its duties would be temporarily suspended and it would be replaced with an appointed board of managers pursuant to Texas Education Code §§ 39.131(a)(9) and 39.136. He further informed NFISD that it could request a "record review" of the decision pursuant to 19 Texas Administrative Code § 97.1037(a)(3). The district, as well as individual members of the board of trustees, requested the record review, and the TEA notified "the [t]rustees that, although the review would take place in Austin, each individual board member was invited to submit, in writing, any information or statement he or she wished to be considered and made part of the record." (Rowell Aff. at 1-2, Doc. 8). The review date, initially scheduled for September 9, 2008, in Austin, Texas, was continued by agreement of the parties to September 25, 2008. When Hurricane Ike interfered with the September 25 review date, the Commissioner rescheduled it to October 2, 2008.

On October 2, 2008, the board of trustees and NFISD filed a temporary restraining order and request for a temporary injunction in *North Forest Independent School District, et al. v. Texas Education Agency*, in the 353rd Judicial District Court, Travis County, Texas, Cause No. D-1-GA-08-3589. The board of trustees and NFISD sought to stop the October 2 hearing in order to determine (1) whether the hearing should be held in Houston or Austin so that "all" of the board members could attend; and/or (2) whether the hearing should be

further delayed because of interruptions caused by Hurricane Ike.[2]  The district court denied the request for a temporary restraining order, and the hearing proceeded.  Subsequently, the board of trustees and NFISD filed a mandamus request with the Third Court of Appeals in Austin, Texas, in *In re: North Forest Independent School District, et al.*, No. 03-08-00615-CV.  The Third Court of Appeals granted mandamus and issued a temporary stay, after the hearing was concluded.  The district court scheduled an injunction hearing for October 15, 2008.

Despite its efforts to halt the proceedings, the board of trustees appeared through counsel at an administrative review in Austin, Texas, on October 2, 2008.  Counsel for the trustees requested that the hearing be postponed.  He did not, however, attempt to address the TEA's July 2008 decision to replace the board of trustees with the board of managers. (Rowell Aff. at 2, Doc. 8). Dr. Raymond Glynn, Deputy Commissioner for School District Leadership and Educator Quality, conducted the review.  He recommended that no changes be made to the Commissioner's proposal to replace the board of trustees.  (*Id.*).

The Commissioner requested preclearance for the appointment of the board of managers from the Department of Justice on July 31, 2008, the same day he notified the board of trustees of its imminent replacement.  (Rowell Aff. Ex. B, Doc. 8). The Department of Justice granted preclearance for this appointment on October 6, 2008.  (Rowell Aff. Ex. C, Doc. 8).

The October 15 injunction hearing did not take place as planned.  When counsel for the board of trustees and NFISD arrived late to the courthouse because of weather-related traffic delays, the district court dismissed without prejudice the injunction hearing.  The Third

---

[2]     Plaintiffs contend that the only issue presented to the state court on the temporary restraining order was "[w]hether the hearing should go forward in light of the Gulf Coast after Hurricane Ike and the inability of counsel for the district and trustees to have prepared for the hearing." (Pl.'s Am. Compl. at 6 n. 3, Doc. 4).  Nevertheless, the Plaintiffs also claim that "[t]he issues before the state district court are whether all board members have a right to attend the record review and the location of any such proceeding[.]" (*Id.* at 6 n.4).

Court of Appeals lifted its stay the next day.  Unimpeded by any state court injunctions or stays, the Commissioner replaced the NFISD board of trustees with a three-member board of managers on October 16, 2008.

Plaintiffs filed suit against the TEA and the State on October 15, 2008, alleging that the replacement of the elected board of trustees by an appointed board of managers violates Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C § 1973c, and Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973.  In conjunction with their Voting Rights Act claims, Plaintiffs contend that "[t]he only time the State of Texas has invoked the Commissioner's rule to effectuate the removal of an elected board has occurred in districts that were majority minority and the board members were minorities[.]"  (Pls.' 1st Am. Compl. at ¶ 36, Doc. 4).[3]  NFISD primarily encompasses two legislative districts: House District 141 (Rep. Senfronia Thompson) and House District 142 (Rep. Harold V. Dutton, Jr.).  According to data provided by the Plaintiffs, House District 141 is 80% African-American, and House District 142 is 67.7% African-American.  The former NFISD board members are African-American. However, the new three-member board of managers, as well as the newly-appointed superintendent, are also African-American.  (*See* Rowell Aff. at 3, Doc. 8).

Plaintiffs further allege that the Commissioner's actions deprive them of equal protection of the law by unconstitutionally distinguishing between board of trustee members and other elected county officials, who may only be removed because of "incompetency, official misconduct, habitual drunkenness, or other causes defined by law, upon the cause therefore being set forth in writing and the finding of its truth by a jury" as provided by the Texas Constitution, art. V, § 24.  Additionally, Plaintiffs allege that the Commissioner's actions deprive

---

[3]     Plaintiffs cite the appointment of a board of managers in 2005 in Wilmer-Hutchins Independent School District and in 1995 in Kendleton Independent School District.

them of due process of law and constitute the unconstitutional taking of a property interest. In support, Plaintiffs argue that the administrative review process does not adequately permit the individual office holders to assert their rights.

In their motion for a temporary restraining order, Plaintiffs requested the reinstatement of the board of trustees pending a resolution of the merits of their case. They further requested that the Section 5 claim be submitted to a three-judge panel. Defendants opposed Plaintiffs' request and argued, *inter alia*, that the Plaintiffs failed to carry their burden of demonstrating the necessity for a temporary restraining order and that a three-judge panel is not warranted because the Section 5 claim is without merit. The Court in its October 28, 2008, Order denied the request for a temporary restraining order and ordered that the parties treat Defendants' pending motion to dismiss as a motion for summary judgment.

## II.        Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc).  Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor.  *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.   The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).   To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial."   W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994);  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert.*

*denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).  The non-movant cannot discharge his burden by offering vague allegations and legal conclusions.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party.  *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).  The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).  In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form.  *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1988).

## III.     Analysis

1.     <u>Section 5 of the Voting Rights Act.</u>

Section 5 of the Voting Rights Act of 1965, as amended, requires covered jurisdictions to obtain preclearance from the United States Attorney General or the United States District Court for the District of Columbia before undertaking any alterations in a "voting qualification or prerequisite to voting," or any changes in a "standard, practice, or procedure with respect to voting"   42 U.S.C § 1973c(a).[4]  "Any voting qualification, prerequisite to voting, or standard, practice, or procedure with respect to voting that has the purpose of or will have the effect of diminishing the ability of any citizens of the United States on account of race or color . . . to elect their preferred candidates of choice denies or abridges the right to vote" and violates Section 5.  *Id.* § 1973c(b).  Section 5 "has a limited substantive goal: to insure that no voting-procedure changes would be made that would lead to a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise."  *Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003) (quoting *Miller v. Johnson*, 515 U.S. 900, 926 (1995)) (internal quotation marks omitted). As long as a voting change has no retrogressive effect, it is entitled to Section 5 preclearance. *See id.*; *see also Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 335-36 (2000).

If a covered jurisdiction successfully complies with the preclearance requirements, "'private parties may enjoin the enforcement of the new enactment only in traditional suits attacking its constitutionality; there is no further remedy provided by § 5.'" *Morris v. Gressette*, 432 U.S. 491, 503 (1977) (quoting *Allen v. State Bd. of Elections*, 393 U.S. 544, 549-50 (1969)).  Here, it is undisputed that TEA obtained preclearance from the Department

---

[4]        It is undisputed that Texas is a "covered jurisdiction" under the statute.

of Justice for its actions.   (*See* Rowell Aff. Ex. C).   As such, "there is no further remedy" available under Section 5, and  Plaintiffs' claim under that provision fails.

> 2.      Section 2 of the Voting Rights Act.

A trustee of an independent school district serves a term of three or four years. Tex. Educ. Code Ann § 11. 059 (Vernon 2006).  If a vacancy occurs, the remaining trustees may either fill the vacancy by appointment until the next trustee election or the board or municipal governing body may hold a special election to fill the vacancy.    *Id.* § 11.060(a), (c).   The trustees serve without compensation. *Id.* § 11.061(e).

The Commissioner may, under certain circumstances, appoint a board of managers to perform the duties of the board of trustees.  Tex. Educ. Code Ann. § 39.131(a)(9) (Vernon Supp. 2006).  Such circumstances include "if a district has a current accreditation status of accredited-warned or accredited-probation, is rated academically unacceptable, or fails to satisfy financial accountability standards as determined by commissioner rule[.]"  *Id.*   Under the Texas Education Code, the board of managers "may exercise all the powers and duties assigned to a board of trustees of a school district by law, rule, or regulation."  *See* Tex. Educ. Code Ann. § 39.136(a) (Vernon 2006).  Additionally, the board of managers may remain in their position up to two years from the anniversary of their appointment, after which an election of members of the district board of trustees must be held.  *See id.* § 39.136(e).

As noted above, the Section 5 claim is without merit because the TEA and the Commissioner obtained preclearance from the Department of Justice for the "change" in the voting procedure.

Furthermore, Plaintiffs are unlikely to prevail on their Section 2 claim.  Section 2 of the Voting Rights Act of 1965, as amended, provides as follows:

(a) No voting qualification or prerequisite to voting or standard,

practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . .

(b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens . . . in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

42 U.S.C. § 1973.  The "'essence' of a § 2 vote dilution claim is that 'a certain electoral law, practice, or structure . . . cause[s] an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives.'"  *Georgia v. Ashcroft*, 539 U.S. at 478 (quoting *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986)).

In analyzing a Section 2 claim, the court applies a two-part framework: first, a party must satisfy the three threshold requirements announced in *Gingles*; and, second, a party must offer evidence of the totality of the circumstances regarding the political landscape. *NAACP v. Fordice*, 252 F.3d 361, 365 (2001).

To satisfy the *Gingles* requirements, the Plaintiffs must show, by a preponderance of the evidence, that: (1) the affected minority group is sufficiently large and geographically compact to constitute a voting age majority in a district; (2) the minority group is politically cohesive; and (3) the majority votes sufficiently as a bloc to enable it, in the absence of special circumstances, usually to defeat the minority group's preferred candidate.  *Id.* at 366 (citing *Gingles*, 478 U.S. at 50-51; *Growe v. Emison*, 507 U.S. 25, 40 (1993)).

If the Plaintiffs meet the *Gingles* requirement, "they must show that under the 'totality of the circumstances,' they do not possess the same opportunities to participate in the political process and elect representatives of their choice enjoyed by other voters." *Jackson v. Waller Indep. Sch. Dist.*, Civil Action No. H-07-3086, 2008 U.S. Dist. LEXIS 34694, at *35 (S.D. Tex. April 27, 2008).  A number of factors are relevant to this inquiry and include:

> 1. the extent of any history of official discrimination in the state or political subdivision that touched the right of the members of the minority group to register, to vote, or otherwise to participate in the democratic process;
>
> 2. the extent to which voting in the elections of the state or political subdivision is racially polarized;
>
> 3. the extent to which the state or political subdivision has used unusually large election districts, majority vote requirements, anti-single shot provisions, or other voting practices or procedures that may enhance the opportunity for discrimination against the minority group;
>
> 4. whether members of the minority group have been denied access to any candidate slating process;
>
> 5. the extent to which members of the minority group in the state or political subdivision bear the effects of discrimination in such areas as education, employment and health, which hinder their ability to participate effectively in the political process;
>
> 6. whether political campaigns have been characterized by overt or subtle racial appeals;
>
> 7. the extent to which members of the minority group have been elected to public office in the jurisdiction.
>
> 8. whether there is a sufficient lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group; and
>
> 9. whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to voting, or standard, practice or procedure is tenuous.

*Fordice*, 252 F.3d at 366-67.  A totality of the circumstances inquiry is necessarily fact-intensive and requires "an intensely local appraisal of the design and impact of the contested electoral mechanisms . . . a searching practical evaluation of the past and present reality . . . and a

functional view of political life."   *Id.* at 367 (internal citations, quotations, and punctuation omitted).

Here, Plaintiffs have failed to allege any of the *Gingles* factors or address the totality of the circumstances inquiry.   Indeed, Plaintiffs have not explained how the Commissioner's actions have violated Section 2 at all.   By Plaintiffs own admission, every voter in the NFISD electorate, regardless of race, is affected equally by the appointment of the board of managers, and there has been no evidence that a particular minority group within the NFISD electorate has had its voting power diluted when compared to non-minority voters in the NFISD electorate.   To the extent Plaintiffs argue that the mere act of appointing a school board supports a violation of Section 2, such a claim must fail.   There is no constitutional provision prohibiting the appointment of school boards.   *Sailors v. Board of Education*, 387 U.S. 105, 108 (1967); *see also Searcy v. Williams*, 656 F.2d 1003, 1009-10 (5th Cir. 1981 Unit B) (finding that "[a]ppointed school board systems are permissible under the Constitution so long as the appointments are not made in a manner that systematically excludes an element of the population from consideration").   Moreover, even if Plaintiffs have stated a claim under Section 2, there is no evidence at this juncture that the appointment of the board of managers has any discriminatory impact or purpose.   African-American voters are not being impacted by this appointment in any manner different from any other voter.   Plaintiffs, therefore, have failed to make out a claim under Section 2.

Additionally, Plaintiffs' constitutional claims lack merit.   Plaintiffs have asserted violations of equal protection and due process, but they have cited no authority and provided no analysis with respect to these claims.   Assuming, *arguendo*, that Plaintiffs are alleging violations of the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment

pursuant to 42 U.S.C. § 1983, such claims are barred by the State's sovereign immunity under the Eleventh Amendment.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Cozzo v. Tangipahoa Parish Council-President*, 279 F.3d 273, 280-81 (5th Cir. 2002).  Even if the claims were not barred by sovereign immunity, Plaintiffs have still failed to demonstrate a likelihood of success on the merits with respect to these claims.

The Equal Protection Clause of the Fourteenth amendment states, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., amend. XIV.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 472 U.S. 202, 216 (1982)).

Plaintiffs argue that the Commissioner's appointment of non-elected officials violates their right to equal protection under the law because they are treated differently from other elected county officials.  However, the Texas Constitution specifically permits removal of elected officials for "other causes defined by law," and the Texas Education Code's sanctions for poorly-performing districts qualifies as such a cause.  In the alternative, the removal procedure would be subject to rational basis review and sustained if the classification is rationally related to a legitimate state interest.  *See id.* at 440 ("The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.").[5]  The State clearly has a legitimate interest in addressing the continued financial stability of its school districts, and the temporary suspension of the duties of a dysfunctional board of trustees is rationally related to this end.  *See also Mixon v. Ohio*, 193 F.3d 389, 402-04 (6th Cir. 1999) (dismissing federal equal protection claim under a rational basis

---

[5]      If a higher level of scrutiny is warranted, Plaintiffs have not articulated their authority for such.

review in a case challenging the appointment of school board members).  Thus, Plaintiffs' equal protection claim fails on the merits.

Plaintiffs' due process claims are also likewise meritless.  The Due Process Clause of the Fourteenth Amendment states, in pertinent part, "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const., amend. XIV.  There are two components of a due process claim under the Due Process Clause of the Fourteenth Amendment: procedural and substantive.  The procedural component "promotes fairness in government decisions '[b]y requiring the government to follow appropriate procedures when its agents decide to 'deprive any person of life, liberty, or property.'"  *John Corp. v. City of Houston*, 214 F.3d 573, 77 (5th Cir. 2000) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  The substantive component, on the other hand, bars certain government actions "regardless of the fairness of the procedures used to implement them."  *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998).

To prevail on a procedural due process claim, a plaintiff must demonstrate that a constitutionally protected property or liberty interest has been deprived.  *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."); *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of a hearing is paramount."). If a plaintiff is deprived of a protected property interest, then the court must

determine whether the plaintiff received adequate notice and an opportunity to respond. *Roth*, 408 U.S. at 569-70.

Plaintiffs have failed to demonstrate either that they have a valid property interest or that they were denied adequate notice and an opportunity to respond. First, Plaintiffs have failed to provide authority for their proposition that an elected position is a valid property interest for the purposes of a due process analysis. Second, even assuming, *arguendo*, that an elected position is a valid property interest, the Commissioner specifically gave the board an opportunity to present its case at the administrative review proceeding. Despite scheduling difficulties, Plaintiffs managed to appear at the October 2 hearing and were given the opportunity to present arguments against their removal. That the trustees failed to take advantage of this opportunity to be heard does not implicate a lack of due process. Therefore, Plaintiffs due process claims, even if they could be asserted against Defendants, fail.

In sum, Plaintiffs have failed to carry their burden of persuasion in demonstrating that they are likely to succeed on their Voting Rights Act, equal protection, and due process claims. Accordingly, summary judgment on all claims is appropriate.

## IV.    Conclusion

Accordingly, it is hereby ORDERED that Defendants' motion for summary judgment is GRANTED.

SIGNED at Houston, Texas, this 28th day of September, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE